UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIRELO MMOLAWA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No.:  3:19-cv-00300 |
| v. | : | (VLB) |
| | : | |
| DILIGENT ENTERPRISE, INC. D/B/A | : | |
| COMFORCARE HOME CARE and | : | |
| DEVON G. WILLIAMS | : | March 4, 2020 |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The undisputed facts reveal that Defendants did not "willfully" violate the FLSA. Moreover, the undisputed facts reveal that Plaintiff never reported any deprivation of his meal breaks or interruptions of his sleep time in the time sheets he completed, signed and submitted to the Defendants every week. Thus, Defendants Diligent Enterprise, Inc. d/b/a Comforcare Home Care ("Diligent") and Devon G. Williams ("Williams") (collectively "Defendants") hereby respectfully move for partial summary judgment with respect to both counts of the complaint filed by plaintiff Tirelo Mmolawa.

Count One in Plaintiff's complaint alleges violation of the Fair Labor Standards Act ("FLSA").  This claim is ripe for summary judgment in two ways: (1) with respect to the claim that Defendants failed to pay plaintiff overtime for working twenty-four hours a day seven days per week; and (2) to the extent it alleges that Defendants knew or had reckless disregard for whether their conduct

violated the provisions of §§ 207, 211 and 215(a)(2) of the FLSA.  There are no issues of fact that prevent summary judgment on these claims.

Count Two of Plaintiff's complaint alleging a violation of the Connecticut Minimum Wage Act ("CMWA") is also ripe for summary judgment in two respects: (1) with respect to the claim that Defendants failed to pay plaintiff overtime for working twenty-four hours a day seven days per week; and (2) to the extent it claims that Defendants lacked a good faith belief that any underpayment of wages was in compliance with the wage laws. Again, there are no issues of fact that prevent summary judgment on these claims.

First, plaintiff has failed to produce—because he cannot—any evidence to show that he did not receive at least five hours of uninterrupted sleep on any night, let alone every night.  To the contrary, he completed, signed and submitted sleep logs and timesheets showing that he received *eight* full hours of sleep *every single night*.  Moreover, contrary to his claims that he complained repeatedly about interruptions in his sleep, the record reveals no evidence to support that allegation, beyond his own self-serving testimony.  In contrast, Plaintiff admitted at his deposition that he has no documentation of his alleged efforts to alert Defendants of instances where his sleep time was being interrupted.  Moreover, Defendant provides contemporaneous records that reveal that he never made any calls to complain about sleep interruptions.

Second, Plaintiff has failed to provide any factual basis to support his claims that Defendants acted knowingly or with reckless disregard to whether they were violating the FLSA.  To begin with, every hourly log that Plaintiff

submitted to Defendants stated that he was receiving a full eight hours of sleep per night.  Further, there is no record of any phone calls or messages from Plaintiff that would have put Defendants on notice that he was not getting the eight hours of sleep he was required to get. In view of this undisputed record, Defendants paid Plaintiff for all hours he claimed to have been working.  Any failure by Defendants to pay Plaintiff for interruptions to his sleep time, if any, was not the result of any willful or reckless act.  Rather, it was the result of Defendants relying on records Plaintiff, himself, submitted.

Finally, Defendants have made clear their good faith efforts to comply with the FLSA and state wage payment laws.  Defendant Williams testified that he personally reached out to the Department of Labor ("DOL" or "the Department") on multiple occasions to seek guidance on how to properly pay live-in aides. Not only did Defendants have discussions with the former Director of the Connecticut DOL, but, upon his departure from the Department, Defendants continued to have discussions with a Wage and Hour Investigator at the DOL.  The undisputed record makes plain that Defendants did their due diligence and made a documented good faith effort to comply with the applicable wage laws with assistance and input from the DOL.

Therefore, in view of the absence of any evidence of any knowledge of violating the wage laws or reckless disregard with respect to the same on behalf of Defendants, judgment should be entered in favor of the Defendants with regard to Plaintiff's claim that they knew or had reckless disregard for whether their conduct violated the provisions of §§ 207, 211 and 215(a)(2) of the FLSA and/or

that they lacked a good faith belief that any underpayment of wages was in compliance with the CMWA. Issuance of summary judgment on this issue will reduce the applicable statute of limitations from three years to two years and will render liquidated damages unavailable.

Further, based on the fact that plaintiff has failed to proffer any evidence whatsoever of his alleged inability to obtain at least five hours of uninterrupted sleep throughout every night he was employed—or even during *a single night*—plaintiff cannot prove that Defendants violated the FLSA or the CMWA in failing to pay him additional overtime for hours he expressly reported he did not work. Thus, Defendants are entitled to partial summary judgment on these issues.

## I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff was hired by Diligent as a 24-hour Live-In Aide ("Live-In") on March 13, 2015, but he did not receive a permanent live-in assignment until December 15, 2015.  Defendants' Local Rule 56(a)(1) Statement ("Facts"), ¶ 1.  As part of his orientation, Plaintiff was given a copy of and acknowledged receipt of Defendant Diligent's Employee Handbook, which provides specific instructions on filling out timesheets, particularly for live-in aides.  Facts, ¶ 2.  Indeed, the Handbook provides that the live-in aides are required to detail "the nature and length of any client interruptions in the rest/sleeping period."  *Id.*

On December 8, 2015, Plaintiff was introduced to Defendant's client, Mr. Louis Haddad, with whom Plaintiff was placed as a live-in beginning December 15, 2015. *Id.*, ¶ 3.  On December 8, 2015, Plaintiff executed a Live-In Aide Agreement with Defendant Diligent in which he agreed to, *inter alia*, certain terms

of his employment with regard to sleeping and taking breaks.  Specifically, the agreement provided in relevant part:

> If the employee is required to be on duty for 24 hours or more, a regularly scheduled sleeping period of no more than 8 hours will be excluded from hours worked provided adequate sleeping facilities are provided and the employee can usually have an uninterrupted night's sleep. If you are not able to get 8 hours [sic] sleep each day you'll be removed and different personnel will be tried or the case will be converted to hourly or transferred back to the appropriate authorities and deemed live in inappropriate . . . If the sleeping period is interrupted by a need to provide services for the client, the period of the interruption will count as hours worked. If the period of interruption is such that the employee cannot get at least 5 hours of uninterrupted sleep during the scheduled sleep period, the entire time will be treated as hours worked.

> You are also required to take 3 one hour break[s] for each meal (breakfast, lunch, dinner).  Between those breaks you must also take 2 (1/2) hour breaks.

*Id.*, ¶ 4.  The Live-In Agreement also provided, in bold font, "[m]eal provision is the full responsibility of the client on a daily basis." *Id.*, ¶ 5. Plaintiff admits that he read and understood the contents of the Live-In Aide Agreement at the time he signed it on December 8, 2015, and did not ask any questions or seek any further explanation of its contents at the time it was signed. *Id.*, ¶ 6.

On December 18, 2015, Plaintiff again executed a copy of the Live-In Aide Agreement, although this time the agreement was also executed by Mr. Louis Haddad, the client with whom Plaintiff was placed as a live-in.  *Id.*, ¶ 7.  Mr. Haddad was asked by Defendants to read and sign the Live-In Aide Agreement as part of his orientation so Defendants could set his expectations with regard to Plaintiff and ensure he understood that Plaintiff was to be getting uninterrupted breaks and sleep time. *Id.*, ¶ 8.  The Live-In Agreement signed by Mr. Haddad and

Plaintiff on December 18, 2015 provided the same notice, again in bold font, that "[m]eal provision is the full responsibility of the client on a daily basis." *Id.*, ¶ 9. Plaintiff admits that he again read and understood the contents of the Live-In Aide Agreement at the time he signed it for a second time on December 18, 2015, and did not ask any questions or seek any further explanation of its contents at the time it was signed. *Id.*, ¶ 10.

Further, Plaintiff received instructions from Defendant on how to properly fill out the Timesheets when he began his assignment with Mr. Haddad. Facts, ¶ 11. Plaintiff admits that he understood the Timesheets were completed to track what he did with Mr. Haddad on a daily basis. *Id.*, ¶ 12.

Consistent with the Handbook, training and Live-In Agreement, Plaintiff filled out Defendant's Home Care Services PCA Timesheets ("Timesheets") each week during his assignment with Mr. Haddad. *Id.*, ¶ 13. Any days left blank on Plaintiff's Timesheets were days Plaintiff was not working. *Id.*, ¶ 14. Plaintiff claimed he recorded the time he spent with Mr. Haddad and the day's activities accurately on his Timesheets. *Id.*, ¶ 15.

In addition to the timesheets, Plaintiff filled out Defendant's Live-In Services Hourly Log ("Hourly Log") each week during his assignment with Mr. Haddad. *Id.*, ¶ 16. Defendant's Hourly Log form contains columns wherein Plaintiff recorded time spent doing the following activities for/with Mr. Haddad: general household work, sleeping, taking breaks, and remaining time. *Id.*, ¶ 17. The Hourly Log form suggests that the time recorded for general household work "*should* be kept" to approximately 1.5 hours per day; the time recorded for

6

sleeping "*should* be" 8 hours, but "no less than" 5 hours; the time for break time "must be at least 30 minutes of uninterrupted time" to be considered a break; and, when added to the remaining time spent with the client, all columns "*should*" add up to 24 hours. *Id.* Plaintiff was responsible for accurately filling out the Hourly Log. *Id.*, ¶ 18.

On each and every Hourly Log Plaintiff submitted to Defendants during his assignment with Mr. Haddad, he represented that he was spending 8 hours of each 24-hour period sleeping. *Id.*, ¶ 19.  Plaintiff never submitted an Hourly Log during his assignment with Mr. Haddad that stated that he was not getting a full 8 hours of sleep per night. *Id.*, ¶ 20.

Plaintiff, as caretaker, was responsible for alerting the Defendants if he had interruptions of his rest/sleep time. *Id.*, ¶ 21. Despite claiming he made multiple complaints to the Defendants' office, Plaintiff has no record of having placed these alleged calls. *Id.*, ¶ 22.  Further, despite claiming that he continually left messages for the office during the nights when he was not sleeping, and that the office would call him back "every morning," Plaintiff has no record of these calls. *Id.*, ¶ 23. Plaintiff admitted he never submitted anything in writing to Defendant claiming he was not getting a full eight hours of sleep per night, except for one alleged text message he claims he sent to Defendant Williams in or around January 2016—of which he has no record. *Id.*, ¶ 24.  Moreover, Defendant Williams has no record or recollection of receiving this text message.  *Id.*, ¶ 25.

In contrast to Plaintiff's inability to produce evidence in support of his alleged reports of interruption time, Defendants have records that reveal no such

calls took place. Defendants employ a third party service to field all of the calls made by Defendant Diligent's Live-In Aides from the hours of 4 p.m. to 8 a.m. on Monday through Friday and all day on Saturday, Sunday and all holidays.  Facts, ¶ 26.  Records from this third party service do not reflect a single call from plaintiff regarding any issues with not obtaining sleep due to issues with Mr. Haddad or any issues plaintiff had obtaining his eight hours of sleep per night. *Id.*  Nor do Defendants have any documentation or knowledge regarding any complaints raised by plaintiff regarding issues obtaining sleep while caring for Mr. Haddad.  *Id.* Indeed, the only record from the third party service reflecting a call from Plaintiff is when he asked when his replacement was coming so that he could go on vacation.  *Id.*, ¶ 28.

Despite claiming he would sometimes "get a note" from Mr. Adam Goldberg, the property manager at Mr. Haddad's apartment complex, advising Plaintiff that he was receiving complaints from other tenants that Mr. Haddad was keeping them up during the night, Plaintiff has no record of these notes. *Id.*, ¶ 27. Instead, the records from the service show that Diligent was notified when a smoke alarm was going off at Mr. Haddad's apartment for five minutes and that Plaintiff was subsequently called to ascertain the reason for the alarm going off. *Id.*, ¶ 28.  As it turned out, Plaintiff had gone outside to smoke while food had been left cooking on the stove.  *Id.*  Thus, it is clear that this system was in place, that Plaintiff was well aware of it, and that the contemporaneous records form that system completely contradict his current allegations.

The rate of pay for Plaintiff was set by Defendant Diligent in accordance with joint guidance from the Department of Social Services ("DSS") and the DOL. *Id.,* ¶ 31. Defendant Diligent made deductions for food and lodging provided to Plaintiff according to joint guidance from DSS and the DOL. *Id.,* ¶ 32. In an effort to comply with state and federal wage and hour laws as they relate to live-in aides, Defendant Williams personally reached out to the DOL for assistance. Facts, ¶ 33.

At first, Defendant Williams reached out to the former Director of the Connecticut Department of Labor, Gary Pechie, for guidance regarding requiring that the live-in aides get eight hours of sleep, plus one hour for each of their three daily meals.  Facts, ¶ 33.  Defendant Williams further informed Mr. Pechie that his staff would be told that, if necessary due to their violation of the rules or due to an event beyond their control, the client would be staffed differently.  *Id.*  Mr. Pechie told Defendant Williams that he felt this was a reasonable approach.  *Id..* After Mr. Pechie left the DOL, Defendant Williams continued to speak with an investigator from the Wage and Hour Division of the DOL, Kristi Kenefick. *Id.* Defendant Williams reached out to the DOL in an effort to "make sure [they were] doing the right thing" with regard to paying their live-in aides. *Id.,* ¶ 34.

In response to Defendants' inquiry with the DOL regarding proper pay for live-in aides, Ms. Kenefick provided Defendant Williams with a copy of Field Assistance Bulletin No. 2015-1: Credit towards Wages under Section 3(m) of the FLSA for Lodging Provided to Employees. *Id.,* ¶ 35.  Further, Defendant Williams reached out to the DOL to ask what version of a timesheet he should have

Defendant Diligent's live-ins use. *Id.*, ¶ 36. Defendant Williams even sent them various samples of timesheets and logs he considered using and finally settled on the version he currently uses based on feedback from Ms. Kenefick, who recommended using that particular hour log, as she felt other versions proposed by Defendant Williams were "too busy" and might cause confusion among the live-ins. *Id.*

Consistent with this guidance and the records submitted by the Plaintiff, Plaintiff received overtime pay, without deductions, in *every* pay period during his assignment with Mr. Haddad. Id., ¶ 29. Despite claiming he did not understand how his pay was being calculated, Plaintiff admitted he never asked anyone from the Defendants' office to explain his paystubs to him. Id., ¶ 30.

Instead, years after the fact, Plaintiff filed a Complaint in Superior Court on January 25, 2019, which was removed to Federal District Court on February 28, 2019. Plaintiff then filed an Amended Complaint ("Complaint") on May 23, 2019. In this Complaint, plaintiff has alleged two counts: (1) Violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") as to both defendants; and (2) Violation of the Connecticut Minimum Wage Act, General Statutes § 31-58 *et seq.* ("CMWA") as to both defendants.[1]

Plaintiff claims that Defendants violated sections 207, 211 and 215(a)(2) of the FLSA by: (1) failing to pay plaintiff overtime; (2) failing to keep proper records regarding the cost of furnishing lodging and food, as well as regarding employees' daily start and stop times; and (3) taking improper deductions from

---

[1] Defendants do not concede that Defendant Williams is an "employer," as defined in either the FLSA or the CMWA, and reserve the right to make that argument subsequently.

plaintiff's paycheck for food and lodging.  In addition, plaintiff claims that

Defendants violated the CMWA by failing to pay plaintiff overtime compensation

in violation of General Statutes § 31-76c.  Further, plaintiff claims that, because of

Defendants' alleged unreasonable, arbitrary or bad faith refusal to pay, plaintiff is

entitled to twice the full amount of the wages he was not paid pursuant to General

Statutes § 31-72.

## II.    LEGAL STANDARD

A motion for summary judgment may be granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden at trial."  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The Court "must determine whether there is a genuine factual issue for

trial, which requires that the party opposing summary judgment must do more

than simply show that there is some metaphysical doubt as to the material facts."

(Internal quotation marks omitted.)  *Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d

50, 55 (2d Cir. 1997).  "A dispute is genuine if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  (Internal

quotation marks omitted.)  *Dixon v. Metropolitan District Commission*, 2017 WL

4247051 at *4 (D. Conn. Sept. 25, 2017) (*Bolden, J.*).  Even if the parties dispute

11

certain material facts, summary judgment will be granted "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." (Internal quotation marks omitted.)  *Golden Pacific Bancorp. v. F.D.I.C.*, 375 F.3d 196, 200 (2d Cir. 2004).  Indeed, "[i]f the nonmoving party submits evidence which is 'merely colorable,' legally sufficient opposition to the motion for summary judgment is not met."  *Dervishi ex rel. T.D.* v. *Stamford Board of Ed.*, 2015 WL 4647900 at *2 (Aug. 5, 2015) (*Eginton, J.*).  "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."  *Golden Pacific Bancorp,* 375 F. 3d at 200.

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claims."  *Vann v. City of New York*, 72 F.3d 1040, 1048 (2d Cir. 1995).  "A defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case."  *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996).  Plaintiff cannot bear his burden of proof on the issues raised in this motion, so summary judgment should be granted.

III.  **ARGUMENT**

    A.  *Plaintiff cannot prove that he was due additional overtime compensation, as he has failed to produce any evidence, beyond his own self-serving statements, to show that he did not obtain at least five hours of uninterrupted sleep* <u>*every single night*</u> *he worked for Defendants.*

12

Plaintiff claims that he is due additional overtime compensation because he did not obtain at least five hours of uninterrupted sleep per night during *every single night* that he worked for Defendants caring for Mr. Haddad.  In support of this contention, he offers nothing but his own self-serving deposition testimony claiming that he complained about not obtaining uninterrupted sleep.  This is not enough.

Despite claiming he made multiple complaints to the Defendants' office, Plaintiff has no record of having placed these alleged calls.  Facts, ¶ 22. Moreover, despite claiming that he continually left messages for the office during the nights when he was not sleeping, and that the office would call him back "every morning," Plaintiff has no record of these calls. *Id.*, ¶ 23.  Finally, plaintiff admitted he never submitted anything in writing to Defendants claiming he was not getting a full eight hours of sleep per night, except for one text message he claims he sent to Defendant Williams in or around January 2016—of which he conveniently has no record either. *Id.*, ¶ 24.

Further, Defendants have no record of plaintiff ever calling to complain about not being able to obtain sleep due to issues with Mr. Haddad.  To the contrary, the contemporaneous records reveal that Plaintiff never made any call regarding any such concern.  Facts, ¶ 26.

Crucially, Plaintiff admitted that he prepared, signed and submitted to Defendants timesheets and hourly logs every week. There is no dispute that the records Plaintiff prepared, signed and submitted state that he obtained eight hours of sleep during *every* night he cared for Mr. Haddad.  There is also no

dispute that Defendants determined Plaintiff's compensation based on these detailed records submitted by plaintiff. Summary judgement should be granted on Plaintiff's claims for hours he now claims he worked but never before reported.

Typically, "[t]he time spent perform[ing] activities predominantly for the benefit of the employer is compensable." *Rodriguez v. Avondale Care Group, LLC*, 2018 WL 1582433 at *3 (S.D.N.Y. March 27, 2018) (internal quotation marks omitted). However, there are exceptions to this rule. Indeed,

> "[w]here an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep.... Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked." 29 C.F.R. § 785.22(a). Scheduling a 24-hour shift, therefore, does not necessarily entitle plaintiffs to compensation for the full twenty-four hours.

*Id.*

There is no dispute here that plaintiff entered into an agreement with Defendant Diligent, which provided that he would not be paid for his meal and sleeping periods, provided he was able to obtain eight hours of sleep. Facts, 4. While Plaintiff now claims that he did not receive eight hours of sleep per night due to interruptions from having to care for Mr. Haddad, Plaintiff's hourly logs submitted to Defendants show that he received eight hours of sleep during *every single night. Id.*, ¶ 19. Moreover, Defendants have no record of Plaintiff ever complaining to Defendants about not obtaining uninterrupted sleep. *Id.*, ¶ 26. Plaintiff should not be permitted to pursue this claim based on this record.

14

In *Rodriguez*, a live in home healthcare aide claimed that her employer violated the FLSA and New York state wage laws in failing to compensate her for overtime worked when she did not receive her breaks without interruption. The court held that, "[w]hile [Employer] is plainly at a disadvantage in creating accurate time records when its employees work offsite, it cannot assign that duty to its employees without any guidance of what is expected." *Rodriguez, supra*, 2018 WL at *7. In contrast, Defendants here provided plaintiff with a live-in agreement, as well as with the Handbook, both of which provided specific instructions regarding sleeping and meal periods and how to record their time for each. Further, Plaintiff admitted that he received instructions from Defendant on how to properly fill out the Timesheets when he began his assignment with Mr. Haddad. Facts, ¶ 11. Thus, there is no dispute that plaintiff was provided with plenty of instruction regarding how to fill in his timesheets.

In *Rodriguez*, the court held that the employer had constructive knowledge that the plaintiff was unable to take her required breaks because she did not report that she took them on certain occasions. *Rodriguez, supra*, 2018 WL at *7. Unlike in *Rodriguez*, Defendants here had no knowledge—constructive or otherwise—that plaintiff was not obtaining a full eight hours of sleep. To the contrary, all of the available records – particularly those completed and signed by the Plaintiff – show that he did get his meal and sleep breaks. Thus, Defendants were entitled to rely upon the records maintained and submitted by plaintiff in determining his pay.

Indeed, as the Sixth Circuit has held,

> [a]t the end of the day, an employee must show that the employer knew or should have known that he was working overtime or, better yet, he

15

should report the overtime hours himself. Either way, the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions. An employer cannot satisfy an obligation that it has no reason to think exists. And an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid.

*White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012)

(emphasis added; internal quotation marks omitted).  Further,

[u]nder the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process. . . .  When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA.

*Id.* (emphasis added).  The Ninth Circuit reached a similar conclusion in *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981), holding:

An employer must have an opportunity to comply with the provisions of the FLSA. This is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation. However, where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of § 207(a).

Id. at 414–15 (emphasis added).

Here Defendants established a clear and reasonable procedure for Plaintiff to report his time. Plaintiff acknowledged receipt of that procedure and admitted that he was trained in how to comply with it. Notwithstanding his written acknowledgment and admission to receiving specific instructions, Plaintiff failed *ever* to report that he did not obtain a full eight hours of sleep during his entire tenure while working for Defendant Diligent.  He cannot now file a lawsuit, years

later, claiming *for the first* time that he was deprived of his full eight hours of sleep.

In failing to record or complain about any sleep interruptions throughout his entire tenure with Defendant Diligent, Plaintiff failed to meet his obligation of implementing the FLSA's overtime provisions. Without his providing some type of information regarding his alleged sleep interruptions, Defendant Diligent was prevented from addressing the issue in any way, including paying him for additional overtime worked. Defendants did not violate the FLSA and/or the CMWA in failing to compensate Plaintiff for additional overtime worked as a result of his alleged sleep interruptions, where he failed to maintain proper records in accordance with Defendant Diligent's reasonable time-keeping process and failed ever to raise concerns about not obtaining his full eight hours of sleep. Thus, summary judgment should issue on Plaintiff's claim for uncompensated time that he never contemporaneously reported.

B.   *To the extent Defendants violated the FLSA in any way, their actions in doing so were not willful.*

Plaintiff claims that Defendants violated sections 207, 211 and 215(a)(2) of the FLSA by: (1) failing to pay plaintiff overtime; (2) failing to keep proper records regarding the cost of furnishing lodging and food, as well as regarding employees' daily start and stop times; and (3) taking improper deductions from plaintiff's paycheck for food and lodging. The damages available depend on whether Defendants' conduct was willful.

i.   Willfulness Standard

17

Plaintiff claims that the statute of limitations for this claim is three years, not two years, because Defendants' actions were done with willful disregard. *See* 29 U.S.C. 255(a).  Plaintiff has no basis to establish willfulness on the part of Defendants.

"The fact that Congress . . . adopted a two-tiered statute of limitations makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 132–33, 108 S. Ct. 1677, 1681, 100 L. Ed. 2d 115 (1988).  In *McLaughlin,* the United States Supreme Court analyzed the term "willful" as it appears in the FLSA:

> In common usage the word "willful" is considered synonymous with such words as "voluntary," "deliberate," and "intentional." See Roget's International Thesaurus § 622.7, p. 479; § 653.9, p. 501 (4th ed. 1977). The word "willful" is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent.

*McLaughlin v. Richland Shoe Co., supra*, 486 U.S. at 133.

The *McLaughlin* Court applied the same test that it employed in *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125–130, 105 S.Ct. 613, 623–626, 83 L.Ed.2d 523 (1985), holding that an employer has not committed a willful violation unless "it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *Id.,* at 1680.  In doing so, the Supreme Court rejected a two-step standard espoused by the Petitioner in that case, the Secretary of Labor.  The Secretary of Labor argued for a two-step standard that would deem an FLSA violation willful "if the employer, recognizing it might be

covered by the FLSA, acted without a reasonable basis for believing that it was complying with the statute." *Id.,* at 1682. The Supreme Court disagreed, finding that the Secretary's proposed standard would

> permit a finding of willfulness to be based on nothing more than negligence, or, perhaps, on a completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects. We believe the Secretary's new proposal, like the discredited *Jiffy June* standard, fails to give effect to the plain language of the statute of limitations.

*Id.* Accordingly,

> It is now settled that to prove a willful violation of the FLSA within the meaning of § 255(a), it must be established that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. . . .  It follows that [i]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, ... its action ... should not be ... considered [willful].

*Reich v. Waldbaum, Inc.*, 52 F.3d 35, 35 (2d Cir. 1995) (citations omitted; internal quotation marks omitted.).  In other words, negligence is not enough. There must be proof that the employer acted intentionally or with a reckless disregard of its obligations.

   ii. *Plaintiff cannot show that Defendants knew or had reckless disregard for whether their conduct violated the provisions of §§ 207, 211 and 215(a)(2) of the FLSA.*

  In order to establish that Defendants knew their conduct violated the FLSA, Plaintiff would have to prove that Defendants (1) had actual or constructive notice that Plaintiff was working hours for which he was not being compensated; and/or (2) were recklessly making improper deductions from Plaintiff's pay for food and lodging provided to him in the course of his work as a live-in aide.  Plaintiff cannot do either.

As set forth above in Section III(A), *supra*, and incorporated by reference herein, Defendants were completely unaware that Plaintiff was allegedly working hours for which he was not compensated—i.e., that he was not obtaining his full eight hours of sleep.  Defendants had neither constructive nor actual knowledge of any sleep interruptions the Plaintiff was allegedly experiencing.  Nor can Plaintiff show that Defendants had reckless disregard for knowing whether he was allegedly working hours for which he was not compensated. He produced no documentation to show that he ever made any complaints regarding an inability to sleep uninterrupted. To the contrary, Plaintiff completed, signed and submitted timesheets and hourly logs repeatedly representing unequivocally that he was obtaining eight full hours of sleep.

Plaintiff bore responsibility for ensuring he was compensated properly. His failure to note on his hourly logs any sleep interruptions or in any way make Defendants aware that he was working additional time for which he was not being compensated is fatal to his claim. Defendants reasonably relied on the documentation of Plaintiff's time that he submitted in calculating his compensation and paid him overtime every week. They should not be called upon now to pay for hours worked that were never reported to them.  *See, e.g., White v. Baptist Mem'l Health Care Corp.*, 699 F.3d at 876; *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d at 414-15.

Not only does Plaintiff's own conduct undercut any claim that Defendants acted willfully, the undisputed record reflects that Defendant Williams reached out to the DOL to ask what version of a timesheet and/or log he should have his

live-ins use.  Facts, ¶ 36.  Defendant Williams even sent them various samples of timesheets and hourly logs he considered using and finally settled on using the version he currently uses based on feedback from Ms. Kenefick, who recommended using that particular hourly log, as she felt other versions proposed by Defendant Williams were "too busy" and might cause confusion among the live-ins.  *Id.*  The effort to seek and implement DOL guidance further forecloses any claim that Defendants acted willfully.

The same holds true for the meal and lodging deduction. While Plaintiff claims that Defendants violated the FLSA by improperly deducting from Plaintiff's pay for food and lodging, he provides no proof that he paid for his meals and cannot dispute that he was provided lodging.[2] Moreover, even if Defendants erred in calculating the proper amount of the deduction, Plaintiff cannot show that they were *recklessly* or *willfully* making improper deductions from Plaintiff's pay for food and lodging.

There is no dispute that Defendant Williams sought advice and counsel from the Connecticut DOL to assist in determining wages and deductions for Defendant Diligent's employees.  In an effort to comply with state and federal wage and hour laws as they relate to live-in aides, Defendant Williams personally reached out to the DOL for assistance.  Facts, ¶ 33.  At first, Defendant Williams reached out to the former Director of the Connecticut Department of Labor, Gary Pechie, for guidance regarding requiring that the live-in aides get eight hours of sleep, plus one hour for each of their three daily meals.  *Id.*  Defendant Williams

---

[2] In fact, call records from Mr. Haddad reveal that Mr. Haddad not only bought Plaintiff food, but also bought him a flat screen television.  Facts, ¶ 37.

further informed Mr. Pechie that his staff would be told that, if necessary due to their violation of the rules or due to an event beyond their control, the client would be staffed differently. *Id.* Mr. Pechie told Defendant Williams that he felt this was a reasonable approach. *Id.* After Mr. Pechie left the DOL, Defendant Williams continued to speak with an investigator from the Wage and Hour Division of the DOL, Kristi Kenefick. *Id.* In response to Defendants' inquiry with the DOL regarding proper pay for live-in aides, Ms. Kenefick provided Defendant Williams with a copy of Field Assistance Bulletin No. 2015-1: Credit towards Wages under Section 3(m) of the FLSA for Lodging Provided to Employees. Facts, ¶ 35. Defendants thus made deductions for food and lodging provided to Plaintiff according to joint guidance from DSS and the DOL. *Id.*, ¶ 32.

Defendants made their best efforts to comply with the written guidance from DSS and the DOL. Indeed, Defendants properly deducted the credits for food and lodging solely from the straight time owed, not from the overtime owed. While Defendants may have inadvertently deducted more than they were permitted to for the food and/or lodging, this was simply a mistake—i.e., negligence. The law is clear that Plaintiff must show that an employer was guilty of more than mere negligence to prove willful conduct. *See McLaughlin v. Richland Shoe Co., supra*, 486 U.S. at 133. That is something Plaintiff cannot do here.

To the contrary, the record is clear that Defendants made herculean efforts to comply with the law. They not only obtained both verbal and written guidance repeatedly from the DOL regarding the proper way to pay live-in aides, but they

22

also went so far as to confirm the best type of paperwork to give to Defendant Diligent's employees to ensure accurate and efficient time-keeping.  Moreover, with respect to Plaintiff's claim that he was not compensated for all of his overtime worked, Plaintiff has failed to show—because he cannot—that Defendants had any knowledge, either constructive or actual, that he was working additional overtime for which he was not being compensated.  Under these circumstances, Plaintiff cannot show that Defendants' actions were willful or in reckless disregard for whether they were in compliance with the FLSA.

C.   *To the extent the Defendants violated the CMWA, they at all times maintained a good faith belief that they were complying with the law.*

Plaintiff claims that Defendants violated the CMWA by failing to pay Plaintiff overtime compensation in violation of General Statutes § 31-76c.  Again, available damages are governed by whether Defendants can establish they acted in "good faith." The undisputed record reveals that they did so.

i.   Good Faith Belief Standard

Pursuant to General Statutes § 31-72, "[w]hen any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k . . ., such employee shall recover, in a civil action, (1) twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court."  Plaintiff claims that, because of Defendants'

23

alleged unreasonable, arbitrary or bad faith refusal to pay, plaintiff is entitled to twice the full amount of the wages he was not paid pursuant to General Statutes § 31-72.  The undisputed record refutes plaintiff's claim.

"Good faith" has not been defined in the context of the CMWA.  Thus, Courts look to the interpretation of "good faith" as used in the FLSA:

> The United States Court of Appeals for the Second Circuit has defined "good faith" as "an honest intention to ascertain what the [FLSA] requires and to comply with it." *Reich v. Southern New England Telecommunications Corp.,* 121 F.3d 58, 71 (2d Cir. 1997). It requires "more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Id*

*Stevens v. Vito's by the Water, LLC*, 2017 WL 6045302 at *5 (Conn. Super. Nov. 9, 2017) (*Noble, J.*).

> ii.   *To the extent that Defendants violated the CMWA, they have shown that they, at all times, had a good faith belief that they were complying with the law, in that they attempted to ascertain the requirements of the law and acted to comply with them.*

In order to avoid double damages, Defendants have the burden of showing that they had a good faith belief that they were complying with the CMWA by showing that they took steps to ascertain the requirements of the law and then acted to comply with them.

As set forth above in Section III(A), *supra*, and incorporated by reference herein, Defendants were completely unaware that Plaintiff was allegedly working hours for which he was not compensated—i.e., that he was not obtaining his full eight hours of sleep.  Defendants had appropriate paperwork, procedures, and training in place to ensure that they were in compliance. Defendants had neither

24

constructive nor actual knowledge of any sleep interruptions the plaintiff was allegedly experiencing.  To the contrary, Plaintiff prepared, signed and submitted timesheets and hourly logs representing unequivocally that he was obtaining eight full hours of sleep, and he has produced no documentation to show that he ever made any complaints regarding an inability to sleep uninterrupted.  Plaintiff bore some responsibility for ensuring he was compensated properly.  His failure to note on his hourly logs any sleep interruptions or in any way make Defendants aware that he was working additional time for which he was not being compensated is fatal to his claim. Defendants reasonably relied on the documentation of Plaintiff's time that he submitted and paid him according to the time recorded on his hourly logs and timesheets.

Further, Defendant Williams reached out to the DOL to ask what version of a timesheet and/or log he should have his live-ins use.  Facts, ¶ 36.  Defendant Williams even sent them various samples of timesheets he considered using and finally settled on the version he currently uses based on feedback from Ms. Kenefick, who recommended using that particular hourly log, as she felt other versions proposed by Defendant Williams were "too busy" and might cause confusion among the live-ins.  *Id.*

Thus, Defendants took steps to ascertain the requirements of the CMWA, including corresponding with the DOL and obtaining written guidance from the DOL.  The Defendants then implemented this advice in utilizing the hourly logs recommended by the DOL and in adhering to the law by paying Plaintiff for all overtime he documented on his hourly logs and timesheets.  Defendants did not

violate the CMWA, but to the extent they failed to compensate plaintiff for any additional hours he may have worked, such good faith error was due to plaintiff's failure to properly record his time.

## IV.    CONCLUSION

Plaintiff has failed to prove that Defendants violated either the FLSA or the CMWA in allegedly failing to compensate Plaintiff for additional hours that he worked.  The undisputed facts establish that  Defendants relied on plaintiff's hourly logs and lack of complaints in determining plaintiff's pay.  Further, Defendants took affirmative steps to try to ensure Plaintiff was being paid properly.   Defendants went to the DOL for guidance, and applied such guidance to the best of their abilities. Such actions do not constitute willful behavior; instead, they fact demonstrate a good faith attempt to comply with the law. Based on the undisputed evidence presented, summary judgment should accordingly be entered in favor of the Defendants with regard to Plaintiff's claims (1) that Defendants violated the FLSA or the CMWA in failing to compensate Plaintiff for additional, unreported overtime; (2) that Defendants knew or had reckless disregard for whether their conduct violated the provisions of §§ 207, 211 and 215(a)(2) of the FLSA; and (3) that Defendants did not act in good faith when they allegedly violated the CMWA.

Respectfully submitted,


/s/ *Maura A. Mastrony*
Craig T. Dickinson (ct18053)
Maura A. Mastrony (ct27787)
LITTLER MENDELSON, P.C.
One Century Tower
265 Church Street
Suite 300
New Haven, CT  06510
Telephone: 203.974.8700
Facsimile: 203.974.8799
cdickinson@littler.com
mmastrony@littler.com


## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.  Parties may access this filing through the Court's electronic filing system.


/s/ *Maura A. Mastrony*
Maura A. Mastrony