UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIRELO MMOLAWA, | : | |
| Plaintiff | : | |
| | : | No. 19-cr-300 (VLB) |
| v. | : | |
| | : | |
| DILIGENT ENTERPRISES, INC. and | : | December 7, 2020 |
| DEVON WILLIAMS, | : | |
| Defendants | : | |
| | : | |
| | : | |
| | : | |

MEMORANDUM OF DECISION
GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

   Tierlo Mmolawa brought this action against Diligent Enterprises, Inc. d/b/a Comforcare Home Care ("Diligent Enterprises") and its owner, Devon Williams, alleging violation of the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201, *et seq.*, and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen Stat. § 31-58, *et seq.* Plaintiff, who was formerly employed by the Defendants as a 24-hour live in health care aide, alleges that he was not paid when his sleep time was interrupted by his client's service calls and for instances where he did not receive meal breaks, both of which occurred on a daily basis. *See generally* [Dkt. 22 (Am. Compl.)].[1] Additionally, Plaintiff alleges that Defendants improperly deducted the costs of food and lodging from Plaintiff's wages by exceeding the amount that could be deducted without actual documentation. [*Id.* ¶ 25]. Plaintiff

_____

[1] The issue of whether Mr. Williams is personally liable as Plaintiff's employer is not before the Court presently. Mr. Williams does not concede that he is an employer for FLSA purposes. See [Dkt. 43-1 Def. Mem. in Supp. at 10, n. 1]

seeks liquidated damages for alleged willful violation of the FLSA pursuant to § 216(c). [*Id.* ¶ 28].

Before the Court is Defendants' motion for partial summary judgment on the issues of (1) whether Plaintiff is owed overtime wages and (2) whether Plaintiff can establish that any FLSA violations were willful or whether the Defendants can establish a good faith basis for any violation of the CMWA. For reasons set forth herein, the Defendants' Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.

## Background

### I.    Preliminary Issues

Before considering the merits of the parties' arguments, the Court must address a preliminary matter. The parties' filings fail to comply with the Court's Chambers Practices, which were docketed on February 28, 2019. [Dkt. 10]. Defendants' moving brief was manually filed and does not satisfy the Court's accessibility requirements. [*Id.* at 3]. Moreover, the Defendants failed to comply with the Court's instruction to individually file each exhibit, [Dkts. 44-1, 48]. [*Id.* at 5]("When exhibits are filed in conjunction with a dispositi[ve] motion, the exhibits must be listed and described in a corresponding table of contents. The table of contents detailing the exhibits should itself be the first exhibit*. Each exhibit must be filed as a separate attachment and must be filed in an OCR text-searchable PDF format.*")(italics in original).  For his part, Plaintiff did not follow the font requirement set forth in Chambers Practices. [*Id.* at 1]. Plaintiff's D. Conn. L. R. Civ. P. 56(a)(2)

statement does not comply with the local rules requiring "… a reproduction of each numbered paragraph in the moving party's Local Rule 56 (a)1 statement."  These rules are necessary to expedite the retrieval, review and analysis of the content of relevant exhibits.  Adherence to these standards is essential to the prompt disposition of motions pending on the Court's formidable docket. The failure to comply with these rules unnecessarily taxes the Court's resources and delays disposition of the related motion. In all future matters, the Court will return any filings that do not comply with Chambers Practices and the District's Local Rules and order briefing to show good cause for refiling.

## II.   Overtime Claims

The following facts are taken from the Local Rule 56 statements of material facts and evidence cited by the parties. The facts are read in the light most favorable to the non-movant, Mr. Mmolawa. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Plaintiff was hired by Diligent Enterprises as a 24-hour live-in health care aide on March 13, 2015, but he did not receive a permanent live-in assignment until December 15, 2015. [Dkt. 44 (Def. L. R. 56(a)(1) statement) ¶ 1].[2] On December 8, 2015, Plaintiff executed a Live-In Aide Agreement with Diligent Enterprises in which he agreed to certain terms of his employment with regard to sleeping and taking

---

[2] For ease of reference, exhibits will refer to evidentiary exhibits included with the Defendant's Motion for Summary Judgment [Dkt. 44] and Plaintiff's Opposition [Dkt. 46] by exhibit only. i.e. [Def. Ex. A] and [Pl. Ex. 1]. Citation to the Defendant's. D. Conn. Civ. L. R. 56(a) statement is applicable where the parties agree as to the fact stated. The Defendants filed an amended affidavit from Mr. Williams and additional exhibits on March 11, 2018, after Plaintiff filed his opposition brief. [Dkt. 48].

breaks. [Def. L. R. 56(a)(1) statement ¶ 4].[3] Specifically, the signed agreement, which the Defendants filed [Def. Ex. B] states:

> If the employee is required to be on duty for 24 hours or more, a regularly scheduled sleeping period of no more than 8 hours will be excluded from hours worked provided adequate sleeping facilities are provided and the employee can usually have an uninterrupted night's sleep…. If the sleeping period is interrupted by a need to provide services for the client, the period of the interruption will count as hours worked. If the period of interruption is such that the employee cannot get at least 5 hours of uninterrupted sleep during the scheduled sleep period, the entire time will be treated as hours worked. You are also required to take 3 one hour break[s] for each meal (breakfast, lunch, dinner). Between those breaks you must also take 2 (1/2) hour breaks.

Defendants argue that "[a]s part of his orientation, Plaintiff was given a copy of and acknowledged receipt of Diligent Enterprise's Employee Handbook, which provides specific instructions on filling out timesheets, particularly for live-in aides." [Dkt. 43 (Def. Mem. in Supp. for Partial Summ. J.) at 4]; [Def. L. R. 56(a)(1) statement ¶ 2]. In the section titled "Sleeping," the employee handbook states "[e]mployees must record the start and end time of their sleeping period on their time card, as well as the nature and length of any client-based interruptions." [Dkt. 48 (Def. Suppl. Ex. A. (Handbook))]

Plaintiff denies receiving a copy of the employee handbook. [Pl. L. R. 56(a)(2) statement ¶ 2](Pl. Ex. 1 (Mmolawa Depo.) 25:01-25:09, 26:07-26:05 27:01-27:20]. Defendants filed a copy of a handbook [Dkt. 48 (Def. Suppl. Ex. A. (Handbook))],

---

[3] The existence of an agreement between the parties to exclude set sleeping and break hours is not controverted, although the agreement itself is significant for wage and hour purposes. For employees who are required to be on duty for 24 hours or more, regulations promulgated by the DOL pursuant to the FLSA allow the employer and employee to agree to exclude time for meal and sleeping periods when an employee is not working. 29 C.F.R. § 785.22(a); see also *Kinkead v. Humana at Home, Inc.*, 450 F. Supp. 3d 162, 175 (D. Conn. 2020).

along with a witnessed acknowledgment form bearing Plaintiff's signature. [Def. Ex. B]. Plaintiff authenticated his signature on an acknowledgment form. [Pl. Ex. 1 (Mmolawa Depo.) at 27:01-27:10].

It is unclear that the document filed by the Defendants at [Dkt. 48, Ex. A] is the true and accurate version of the handbook that Plaintiff acknowledged receiving by signing the form. The handbook has a copyright date of 2016, but Mr. Mmolawa's signed acknowledgment form is dated March 13, 2015. Second, it appears that Diligent Enterprises is a franchisee of ComForCare Home Care and that the handbook filed as an exhibit is the franchisor's template. *See* [Dkt. 48 (Def. Suppl. Ex. A (Company Handbook) at 3]. The title page of the employee handbook, which provides space for the franchisee's information and the effective date of the handbook, is blank. [*Id.* at 1]. The pay day information on the first page is also blank. [*Id.* at 2]. The next page includes, among other space fillers, "<Insert Company's Legal Name>…d/b/a ComForCare Home Care - <Insert your Territorial Name> (the "Company")!" Thus, it appears that the handbook filed by the Defendants [Dkt. 48, Ex. A], after Plaintiff filed his opposition brief, is the franchisor's template handbook that was likely published after Plaintiff signed the acknowledgment form. The Court cannot consider the employee handbook because the Defendants failed to establish its authenticity and relevance by "…produc[ing] evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

There is no dispute that, upon his assignment as a live-in aide for Mr. Haddad, Defendants' client, Plaintiff and Mr. Haddad both executed a "Live in Aide

5

Agreement." [Def. L. R. 56(a)(1) statement ¶¶ 4-10]. This agreement largely mirrors the "Live in Aide Agreement" between Plaintiff and Diligent Enterprises, except that the agreement between Plaintiff and Mr. Haddad also states, in bold, "Meal Provision is the full responsibility of the client on a daily basis." *Compare* [Def. Ex. B (12/08/2015 Live in Aide Agreement)] to Def. Ex. C (12/15/2015, Live in Aide Agreement]. Plaintiff admitted that he said he understood the contents of the agreement and did not ask any questions. [Def. L. R. 56(a)(1) statement ¶ 10].

Plaintiff admitted that he received instructions on how to fill out his timesheets for the live-in aide assignment.  [Def. L. R. 56(a)(1) statement ¶ 11]. Each week for the duration of the assignment, Plaintiff filled out two forms. The first form is titled "ComForcare Home Care Services PCA Timesheet." [Def. Ex. E ("PCA Timesheets")]. The timesheet entries are handwritten and there is minimal variation in Plaintiff's reported hours and the activities he engaged in from week to week. Except for his first day on the assignment, Plaintiff listed his hours each day worked as 12:00 A.M. to 12:00 A.M. for a twenty-four hour shift. [*Id.*]. Each timesheet bears both Plaintiff's and Mr. Haddad's signatures. [*Id.*].

The second form is titled "ComForcare Homecare Services Live-in Services Hourly Log." [Def. Ex. F ("Home Care Log")]. The Home Care Log consists of a table for employees to log the amount of time spent performing general housework, total hours of sleeping time, total hours of break time, remaining hours with the client, and the total of all hours. Each column includes an explanatory note stating how much time *should* be allotted for that category. For total hours of sleeping time, the form states "[s]hould be 8 but no less than 5." For total hours of break time, it

states "[m]ust be at least 30 minutes of uninterrupted time to be a break." The table contains seven rows for employees to enter their time. The time allotments in the first row are pre-filled with 1.5 hours for general housework, 8 hours for sleeping time, "1+3 (meal)" for break time, 1.5 hours as remaining time with the client, and a total of 24 hours. In other words, if on the first workday of the week Plaintiff received more or less sleeping time or break time than suggested by the form, he would have to cross out the pre-filled portion and list the amount that he actually received. In every Home Care Log that Plaintiff completed, which span from the beginning of the assignment in December 2015 through its conclusion in March of 2017, Plaintiff repeated the form's suggested time allotments for every day he worked. Plaintiff signed every form and never indicated on any of the forms that he received any amount other than eight hours of sleeping time and "1+3 (meal)" for break time. *See also* [Def. L. R. 56(a)(1) statement ¶ 20].

Plaintiff testified that when he started the assignment, someone showed him how to fill out the forms, but Plaintiff does not recall who he spoke with or the substance of their conversation. [Pl. Ex. 1 (Mmolawa Depo.) 74:05-75:03].

Plaintiff denies that the figures on the Home Care Logs he completed accurately reflect his sleeping and break time. [Dkt. 47 Pl. L. R. 56(a)(2) statement ¶ 16-19]. Plaintiff testified that he moved into Mr. Haddad's two-bedroom apartment upon Mr. Haddad's discharge from a convalescent home and that Mr. Haddad had some mobility difficulties. [Pl. Ex. 1 (Mmolawa Depo.) 36:01- 41:06]. Plaintiff testified that he ordinarily assisted Mr. Haddad to bed around 8:00 P.M., but Mr.

Haddad would awaken and require assistance throughout the night. [Pl. Ex. 1 (Mmolawa Depo.) 51:03-52:23].

Plaintiff testified that, at times, Mr. Haddad's income was insufficient to provide them with groceries. According to Plaintiff, Mr. Haddad was giving money to workers from the convalescent home where he formerly resided, he incurred bank fees by relying on overdrafts, and once, his income was misused by the aide who covered for Plaintiff on Plaintiff's days off. [Pl. Ex. 1 (Mmolawa Depo.) 43:08-43:15, 53:06-56:20]. Mr. Haddad's family members provided additional food for them. [Pl. Ex. 1 (Mmolawa Depo.) 56:06-56:08, 60:04-60:18]. In some instances, Plaintiff paid for his own food, he brought food from home, or his wife brought him food. [Pl. Ex. 1 (Mmolawa Depo.) 58:06-59:05].

Plaintiff testified that he reported these issues orally to Mr. Williams and Mr. Haddad's social worker, but Plaintiff does not recall when these conversations took place or what was specifically discussed. [Pl. Ex. 1 (Mmolawa Depo.) 61:25-63:23]. Plaintiff testified that, in one instance, he sent a text message to Mr. Williams to inform him that he assisted Mr. Haddad with a shower at 2:00 A.M. [Pl. Ex. 1 (Mmolawa Depo.) 62:05-63:16]. Plaintiff testified that Mr. Williams returned his message the following morning and told him that if he no longer wanted the assignment, Mr. Williams would assign someone else. [Pl. Ex. 1 (Mmolawa Depo.) 62:05-63:16; 64:24-65:19]. Plaintiff testified that he stopped trying to complain about inadequate sleep because Mr. Haddad was complaining to Diligent Enterprises that Plaintiff was not responding to his calls. [Pl. Ex. 1 (Mmolawa Depo.) 78:16-79:05].

8

Plaintiff testified that he called an emergency number provided by Diligent Enterprises nightly to inform them that he was not sleeping. [Pl. Ex. 1 (Mmolawa Depo.) 78:16-89:13].   The Defendants aver that "[r]ecords from this third party [emergency answering] service do not reflect a single call from Plaintiff regarding any issues with not obtaining sleep due to issues with Mr. Haddad or any issues Plaintiff had obtaining his eight hours of sleep per night." [Def. L. R. 56(a)(1) statement ¶ 26]. Plaintiff does not have any record of these calls and has not produced any documentary evidence or testimony about specific instances of efforts to inform Diligent Enterprises of any sleep disruption or food insecurity. [Def. L. R. 56(a)(1) statement ¶ 26]. Plaintiff claims Mr. Gama, an employee who would occasionally relieve Plaintiff, told Plaintiff that he experienced similar issues in caring for Mr. Haddad and that he complained to Diligent Enterprises. [Pl. L. R. 56(a)(2) statement ¶ 21]; [Pl. Ex. 1 (Mmolawa Depo.) 102:24-105:09, 144:09-147:16]. Plaintiff has not produced an affidavit or deposition testimony from Mr. Gama and Plaintiff's statement as to what Mr. Gama told him is inadmissible hearsay, as it is an out-of-court statement by Mr. Gama being used for the truth of the matter asserted. Fed. R. Evid. 802.

Plaintiff also argues that the Defendants failed to produce Mr. William's telephone records to buttress Mr. Williams's affidavit refuting Plaintiff's testimony that Plaintiff called the "work number" to report issues on a daily basis. [Pl. L. R. 56(a)(2) statement ¶ 21]. However, Mr. Williams's amended affidavit, filed the day after Plaintiff's opposition brief, is accompanied by a redacted call log from the third-party answering service. [Dkt. 48, Def. Ex. C]. The redacted call log shows that

the incoming messages were from Mr. Haddad complaining about Plaintiff or instances where Plaintiff was calling out of work. [*Id*.]. None of the call log notes reflect complaints by Plaintiff about interrupted sleep or missed meal periods. *See e.g.* [Def. Ex. C ((DILIGENT0229)(01/08/2016)("[Mr. Haddad] [c]alled because he is unhappy with his aide. States he was left alone for seven hours. States he bought the caregiver a Flat screen TV and buys him chinese take out. The client is not happy with the caregivers choices the caregiver is Tirelo Mmalawa…")(sic); *see also, e.g.* [*Id*. at DILIGENT0318)(02/10/2017)("CG Tirelo Mmolawa called to see when there will be another CG coming in tomorrow he said that he will be on vacation.")]. Plaintiff does not claim that Defendants redacted his calls from the call log.

### III.   Defendants' wage and hour compliance efforts

In support of their motion for partial summary judgment, Defendants aver that Diligent Enterprises set Plaintiff's pay rate in accordance with guidance from the Connecticut Department of Social Services ("DSS") and the Connecticut Department of Labor ("CT DOL"). [Def. L. R. 56(a)(1) statement ¶ 31]; [Def. Ex. D (Williams Depo.) 46:09-46:25]. Defendants further argue that Mr. Williams contacted Gary Pechie, then-Director of the CT DOL for guidance regarding payroll policies for deducting meal and sleeping time. [Def. L. R. 56(a)(1) statement ¶ 31].

Plaintiff's opposition brief argues that "Defendants lied to this Court when they represented to this Court that they sought guidance from Mr. Pechie who, they claim advised them in 2014 about their pay practice for excluding sleep time and mealtimes." [Dkt. 46 (Pl. Mem. in Opp'n.) at 33]. To establish the purported falsity

of Defendants' claim, Plaintiff cites a December 11, 2014 email from Mr. Williams to Mr. Pechie asking whether the state agency would view a requirement that home-health aides receive eight hours of sleeping and the four cumulative hours of breaks per day as reasonable. [Pl. Ex. 5 (Email from Williams to Pechie, 12/11/2014)]. The email continues that "…[it] will be made aware to staff that if they violate or non compliant or if the event is beyond their control-as a company policy the client will be staffed differently (including sending back to the state or relevant authorities.)" (sic)(parenthetical in original). Mr. Pechie, as the Director of the CT DOL Wage and Workplace Standards Division, responded "[t]hat looks reasonable." [Pl. Ex. 5 (Pechie Repl. Email to Williams, 12/11/2014)]. The evidence that Plaintiff cites does not establish that Defendants intentionally misled the Court; on the contrary it shows that Defendants sought compliance assistance from the state official responsible for wage and hour enforcement.

Plaintiff argues that the Defendants received subsequent and superseding guidance from the CT DOL, specifically the Revised Joint DSS and CT DOL Guidance and the DOL Field Assistance Bulletin No. 2015-1. [Dkt. 46 (Pl. Mem. in Opp'n.) at 33]; [Pl. Exs. 6-7, respectively]. The Revised Joint DSS and CT DOL Guidance issued on March 31, 2016 summarizes the U.S. Department of Labor's final rule titled "Application of the Fair Labor Standards Act to Domestic Service," announced October 1, 2013. [Pl. Ex. 6 (Rev. Joint DSS and CT DOL Guidance, 03/31/2016)]. The rule covers both employer-credits for food and lodging and deductions for sleeping time and meal breaks. [*Id.*]. In so far as the guidance addresses employer deductions for sleeping time and meal breaks, there are no

substantive deficiencies with Diligent Enterprises' policy itself. *Compare* "Live in Aide Agreement" excerpted at *supra*. 3 to [Pl. Ex. 6 (Rev. Joint DSS and CT DOL Guidance, 03/31/2016) at 3](citing 29 CFR 552.102).

As to the meal and lodging credits, the definition of "wage" under the FLSA "includes the reasonable cost ... to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees..." 29 U.S.C. § 203(m)(1). The Revised Joint DSS and CT DOL Guidance explains that "<u>USDOL has indicated that housing costs must be calculated on an individual basis, and are dependent on actual housing-related expenditures</u>. Pursuant to the FLSA record keeping regulations, in order to take a wage credit under section 3(m), an "employer must maintain accurate records of the (actual) costs incurred in furnishing lodging to the employee." [Pl. Ex. 6 at 2](citing 29 C.F.R. § 516.27(a) and 29 C.F.R. § 552.100 (d))(underlining where bold in original). The Revised Joint DSS and CT DOL guidance "strongly recommend[ed]" that employers review the U.S. Department of Labor's Field Assistance Bulletin 2015-1, which explains the requirements for an employer to deduct the food and lodging credit from regular-time wages. [*Id.* at 1].

The U.S. Department of Labor's Field Assistance Bulletin 2015-1 states that "[b]eacuse live-in domestic services employees, for example, often reside at the employers' private homes without paying rent, this requirement is met for those workers." [Pl. Ex. 7 at 2]. "With respect to live-in domestic service employees only, an employer that does not provide such records may claim a certain amount-up to seven and one-half times the statutory minimum hourly wage for each week

lodging is furnished, currently $54.38 (7.5 x $7.25) – toward wages rather than the reasonable cost or fair value of the housing provided." [*Id.* at 3](citing 29 C.F.R. § 552.100(d)).

Plaintiff avers that the Defendants deducted $444.80 biweekly from Plaintiff's paychecks. [Pl. Ex. 4 (Mmolawa earnings statements)]. From the Court's review of the payroll records, it appears that Diligent Enterprises deducted the food and lodging credit by downwardly adjusting Plaintiff's regular time hourly pay rates. [*Id.*]. Neither the amount of the food and lodging credit nor the methodology used by Diligent Enterprises in calculating the credit are expressly reported on Plaintiff's earning statements.

The Defendants argue that they undertook further compliance efforts after Mr. Pechie left the CT DOL by contacting another investigator with the department, Kristi Kenefick, who provided advice on Diligent Enterprise's timesheets and a copy of the U.S. DOL's Field Assistance Bulletin No. 2015-1. [Def. L. R. 56(a)(1) statement ¶¶ 34-36]. In opposition, Plaintiff argues that the Defendants did not contact Ms. Kenefick until March 2018, after the Defendants were on notice of a claim brought by plaintiff's counsel on behalf of another former home health aide asserting that she was due unpaid wages for interrupted sleep time for every night that she was employed. [Pl. L. R. 56(a)(2) statement 35]. Moreover, Defendants' communications with Ms. Kenefick occurred approximately one year after Plaintiff was last employed by the Defendants.

## Discussion

### I.    Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson*, 477 U.S. at 255; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); see *Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at *4 (D. Conn. Oct. 20, 2004) ("At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011).   Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

## II.     Overtime Wages under the FLSA and CMWA

The FLSA mandates that, absent defined and significant exceptions, "no employer shall employ any of his employees who in any workweek … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

Here, there is no dispute that Plaintiff is an "employee" of Diligent Enterprises. Additionally, there is agreement that Plaintiff was properly classified as a non-exempt employee, meaning that the employer is obliged to pay him overtime compensation for any work week longer than forty hours. There is also broad agreement between the parties as to what constitutes "work" for compensation purposes. Instead, whether summary judgment should enter for the Defendants'

on Plaintiff's overtime compensation claim hinges on whether Defendants can establish that there is no genuine dispute of material fact as to whether Plaintiff did not obtain at least five hours of uninterrupted sleeping time and four-hours of meals and other breaks each day worked.

"An employee who brings suit under § 16(b) of the [FLSA] for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946)(superseded by statute on other grounds). The Connecticut Supreme Court adopted the *Anderson* burden-shifting framework for analyzing claims under the CMWA. *Schoonmaker v. Lawrence Brunoli, Inc.*, 265 Conn. 210, 234 (2003); *see also Stevens v. Vito's by the Water, LLC*, No. HHDCV156062506S, 2016 WL 7668509, at *4 (Conn. Super. Ct. Nov. 25, 2016).

The U.S. Supreme Court in *Anderson* reasoned that an employee may easily discharge their burden of establishing a claim for unpaid minimum wages or overtime compensation by mere production of the employer's records if the records are adequate and accurate. *Id.* at 686. But, in cases where the employer's

records are inadequate or inaccurate, the employee may satisfy their burden by presenting "…sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference." *Id*. at 687.

If the employee does so, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id*. at 687-88.

In *Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011), the Second Circuit rejected the district court's application of a more stringent standard in cases were an "off-site" employee submits their own timesheets. "In other words, once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours. Accordingly, the fact that an employee is required to submit his own timesheets does not necessarily preclude him from invoking *Anderson's* standard where those records appear to be incomplete or inaccurate." *Kuebel*, 643 F.3d at 363. In *Kuebel*, the plaintiff testified that, notwithstanding official company policy requiring accurate timekeeping, he falsified his timesheets at the direction of his manager. *Id*.

That said, "[f]or compensation to be awarded, plaintiff's activities must not only satisfy the above definition of work, but must also be performed with the

employer's knowledge." *Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 524 (2d Cir. 1998); *see also Kuebel*, 643 F.3d at 365.

Here, unlike *Kuebel*, there is no evidence upon which a fact-finder could reasonably conclude that the employer had actual or constructive knowledge that Plaintiff's sleep and meal times were interrupted by his client's calls for service. Even setting aside the purported handbook, the two "Live-in-Aide Agreements" establish that all of the parties to the agreement understood Diligent Enterprises's requirement that its live-in aides receive at least eight hours of uninterrupted sleeping time, four hours of meal breaks, and that the provision of meals was Mr. Haddad's responsibility. The logs also dictated accurate reporting of work, break and sleep time. Plaintiff completed the logs and his contemporaneous recordings of the way he spent his time establish that he received the requisite amount of sleep time and meal breaks. The pre-printed forms are suggestive, but the "should" language that appears in the column implies a condition: if the employee receives more or less time than that suggested by the form, that amount of time is to be recorded below. While Plaintiff states that he received some instruction on how to complete the forms, he did not recall who he spoke with or the substance of their conversation. Thus, Plaintiff admits he cannot offer evidence that he was misinformed or insufficiently trained on how to complete the logs and accurately record his time.

On summary judgment, the Court credits Plaintiff's testimony that Mr. Haddad requested or required assistance throughout the evening. But Defendants establish that Plaintiff never informed them he was receiving less sleep and break

time than he reported. Plaintiff was aware that the Defendants used an after-hours third party answering service as evidenced by the messages Plaintiff left with the answering service requesting days off. Plaintiff's vague and conclusory testimony that he complained daily to Diligent Enterprises about interrupted sleep is contradicted by his Home Care Logs and the third-party answering service's call logs which do not reflect any complaints by Plaintiff of interrupted sleep time or meal breaks. Plaintiff's unauthenticated recollection of sending a single text message to Mr. Williams stating that on that evening he assisted Mr. Haddad with a shower cannot establish that Plaintiff received less than eight hours of uninterrupted sleep that evening or, more importantly, that his sleep was interrupted every night of the fifteen-month assignment.

Plaintiff's vague, conclusory and unsubstantiated testimony and his refuted claims that he called Defendants to inform them of his interrupted sleep and missed meal breaks, contradicted by his contemporaneous recording of work, break and sleep time in his logs, are insufficient to raise a genuine issue of material fact. "At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.*, No.3:03cv481, 2004 WL 2472280, at *1 (D.Conn. Oct.20, 2004) (internal quotation marks and citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. At the summary judgment stage, a nonmoving party "must offer some hard

evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir.1998). "While all factual ambiguities must be resolved in favor of the nonmoving party, "the nonmoving party may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)(quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998)). Because a reasonable fact finder could not find for Plaintiff on his overtime claims based on his conclusory and contradicted testimony alone, the Court GRANTS summary judgment for the Defendants as to Plaintiff's overtime claims under both the FLSA and CMWA. *See also, Heredia v. Americare, Inc.*, No. 17 CIV. 06219 (RWL), 2020 WL 3961618, at *9-11 (S.D.N.Y. July 13, 2020), *reconsideration denied*, No. 17 CIV. 06219 (RWL), 2020 WL 4748295 (S.D.N.Y. Aug. 17, 2020)(summary judgment for employer granted on live-in home health aides' overtime claims who offered "'[a]llegations that an employee 'occasionally' or 'typically' missed breaks provides 'nothing but low-octane fuel for speculation, not the plausible claim that is required'")(citations omitted).

### ii. Whether Defendants are entitled to summary judgment on the issues of whether they knew or had reckless disregard for whether their conduct violated the provisions of §§ 207, 211 and 215(a)(2) of the FLSA.

As to Plaintiff's remaining claim, he alleges that the Defendants took a wage credit for Plaintiff's food and lodging in excess of the maximum allowable amount without documentation as to the factual amount incurred. [Dkt. 22 (Am. Compl.) ¶ 25]. The Defendants have not moved for summary judgment on this claim, but instead argue that any error made in calculating the amount of the food and lodging credit under the FLSA was the result of negligence and not a willful violation. [Dkt.

43-1 (Def. Mem. in Supp. for Partial Summ. J.) at 19-23]. Since the Court granted summary judgment for the Defendants on Plaintiff's overtime claim, the inquiry instead focuses on Plaintiff's food and lodging deductions.

As the Second Circuit explained in *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009), "[a]n employer willfully violates the FLSA when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act. Mere negligence is insufficient. The effect of a willfulness finding is to extend the statute of limitations period from two to three years. *See* 29 U.S.C. § 255(a). The burden is on the employee to show willfulness." (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Herman v. RSR Sec. Svcs. Ltd.*, 172 F.3d 132, 141 (2d Cir.1999)).

The Defendants argue that "[w]hile Plaintiff claims that Defendants violated the FLSA by improperly deducting from Plaintiff's pay for food and lodging, he provides no proof that he paid for his meals and cannot dispute that he was provided lodging. Moreover, even if Defendants erred in calculating the proper amount of the deduction, Plaintiff cannot show that they were recklessly or willfully making improper deductions from Plaintiff's pay for food and lodging." [Dkt. 50 (Def. Repl. Br.) at 7].

While the Defendants would have a reasonable basis to believe that their sleep and mealtime policies comported with the FLSA and state law based on Mr. Pechie's express approval, the Defendants have not established how they could have reasonably believed the amount they deducted from Plaintiff's wages

comported with § 203(m). Mr. Williams's correspondence with Mr. Pechie does not address wage credits. Additionally, Plaintiff's earnings statements do not disclose that a food and lodging credit was taken by the Defendants from Plaintiff's regular-time wages or how the credit was calculated.   The Defendants' argument as to the food and lodging Plaintiff received misses the mark: in the absence of employer records of the actual cost of the food and lodging, the most the Defendants could have deducted as a credit against the minimum wage pursuant to U.S. DOL regulations was seven and a half times the federal minimum wage. 29 C.F.R. § 552.100(d)(7.5 x $7.25 per hour = $54.38 per week). The Defendants deducted four times that amount without explanation.

The Defendants aver that Plaintiff's pay rate was set in accordance with guidance from the Connecticut Department of Social Services ("DSS") and the Connecticut Department of Labor ("CT DOL"). [Def. L. R. 56(a)(1) statement ¶ 31]. Considering the two primary agency guidance documents at issue potentially calls the veracity of the Defendants' conclusions about the food and lodging credits into question.

The Defendants point to their receipt of the U.S. Department of Labor's Field Assistance Bulletin 2015-1 from Ms. Kenefick, as evidence of the Defendants' compliance efforts.  This offering is unavailing because Defendants did not have the Bulletin when it computed Plaintiff's wages. Defendants did not receive Bulletin 2015-1 from Ms. Kenefick until about one year after Plaintiff's employment with Defendants ended.

The DOL guidance document explains the record-keeping requirement and the alternative maximum default credit that can be claimed in the absence of an employer-maintained record of specific costs. [*Id.*]. Moreover, the guidance document further provides that "[t]he Department's regulations require an employer to keep records showing section 3(m) additions to or deductions from wages if those additions or deductions affect the total cash wages owed. See 29 C.F.R. § 516.27(b). Specifically, if because of a section 3(m) credit, an employee receives less in cash wages than the minimum wage for each hour worked in the workweek, the employer "shall maintain records showing on a workweek basis those additions to or deductions from wages." *Id*. An employer must also maintain such records if an employee is owed overtime in a workweek and the employer has taken a section 3(m) credit." [*Id.*]. Defendants have not produced records demonstrating how they computed Plaintiff's wages.

For purposes of summary judgment, there is ambiguity regarding which DSS and CT DOL policies were considered and when they were considered in determining Plaintiff's pay rate. Defendants can establish that they complied with the DOL requirements for deducting sleep and meal breaks from Plaintiff's wages based on the parties' agreement. However, the same agency guidance documents that explain when sleep and mealtimes can be deducted also address under what conditions the employer may take a credit against the minimum wage for food and lodging. [Pl. Exs. 6-7, respectively, Revised Joint DSS and CT DOL Guidance referring to the DOL Field Assistance Bulletin No. 2015-1]. It is conceivable that the Defendants looked to these policies for guidance as to reducing the amount of

overtime liability that could be incurred during a live-in aide assignment, but Defendant has produced no evidence of its computations.

Compared to the issue of sleep time and meal breaks, the Defendants have not conclusively shown their noncompliance as to both the record keeping and the amount of food and lodging credits was not willful or done with reckless disregard. See *Kinkead v. Humana at Home, Inc.*, 450 F. Supp. 3d 162, 190 (D. Conn. 2020)(addressing the employers' burden for summary judgment as to claims for willfulness under the FLSA).

Accordingly, summary judgment as to whether any violation of the FLSA as to food and lodging credits was willful is DENIED.

### iii. Whether Defendants are entitled to summary judgment on the basis that they acted in good faith with respect to any violations of the CMWA.

Conn. Gen. Stat. § 31–68(a) provides a remedy to an employee who has received less than the minimum fair wage, namely, recovery in a civil action of "(1) twice the full amount of such minimum wage or overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorneys fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of such wages was in compliance with the law, the full amount of such minimum wage or overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorneys fees as may be allowed by the court."

24

Under the CMWA, the burden is on the employer to establish a good faith belief that their underpayment of minimum wages followed the law. Here, the Defendants have not established why they would have believed that their methodology for claiming food and lodging credits, which resulted in the payment of cash wages less than the state minimum wage, complied with the law. Accordingly, the Defendants motion for partial summary judgment as to whether any violations of the Connecticut Minimum Wage Act resulting from improper food and lodging deductions was based on a good faith belief that Defendants' conduct was proper is DENIED.

<u>Conclusion</u>

For the above stated reasons, Defendants' motion for partial summary judgment is GRANTED as to Plaintiff's claims for unpaid overtime wages under both the FLSA and the CMWA. Summary judgment is DENIED as to whether any minimum wage violation of the FLSA resulting from improper food and lodging wage deductions constitutes a willful violation of the FLSA. Additionally, the Court DENIES summary judgment as to whether the Defendants established a "good faith" defense to violation of the CMWA.

The deadline for filing the Joint Trial Memorandum in anticipation of the December bench trial has passed. Considering this ruling, the Court directs the parties to meet and confer and determine 1) whether they would like a referral to a Magistrate Judge for a settlement conference, and 2) when the case will be trial-ready.  The parties are directed to file a status report within twenty-one days of the

date of this order stating whether they jointly request a referral to a Magistrate Judge for a settlement conference and when the case will be trial-ready. The Court will set a new deadline for the Joint Trial Memorandum, followed by dates for a bench trial, if the parties are unable to resolve the remaining issues.

IT IS SO ORDERED

/s/

Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: December 7, 2020

26